**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

May 21, 2024

LETTER TO COUNSEL

RE:  *Camelieta F. o/b/o A.W.F. v. Commissioner, Social Security Administration*
Civil No. SAG-23-1745

Dear Counsel:

On June 29, 2023, Camelieta F. ("Plaintiff"), on behalf of deceased son, A.W.F., petitioned the Court to review the Social Security Administration's ("SSA's" or "Commissioner's" or "Defendant's") decision to deny her claim for benefits. ECF No. 1. Having reviewed the record (ECF No. 8) and the parties' briefs (ECF Nos. 12, 14, 17), I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). I must uphold the SSA's decision if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under these standards, I will affirm the SSA's decision. This letter explains my rationale.

I.  **PROCEDURAL BACKGROUND**

A.W.F. protectively filed claims for disability insurance benefits and supplemental security income benefits on February 18, 2020, alleging a disability onset of November 29, 2018. Tr. 11. The claims were denied initially and on reconsideration. *Id.* A.W.F. passed away on January 1, 2022. *Id.* Upon A.W.F.'s death, Plaintiff assumed A.W.F.'s role as claimant. Tr. 260. An Administrative Law Judge ("ALJ") held hearings on June 22, 2021, and on October 24, 2022. Tr. 38–100. On November 7, 2022, the ALJ determined that A.W.F. was not disabled within the meaning of the Social Security Act[1] during the relevant period.[2] Tr. 8–30.

The Appeals Council declined to review the ALJ's decision. Tr. 1–7. Accordingly, the ALJ's decision is the final decision of the SSA and is ripe for judicial review. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] 42 U.S.C. §§ 301 et seq.

[2] The ALJ determined that Plaintiff did not qualify as a valid substitute party with respect to A.W.F.'s claim for supplemental security income benefits. Tr. 11. Thus, the ALJ dismissed A.W.F.'s claim for supplemental security income benefits and proceeded to consider whether Plaintiff was entitled to disability insurance benefits. *Id.*

## II. THE ALJ'S DECISION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The SSA evaluates disability claims using a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. Under this process, an ALJ determines, in sequence, whether a claimant: "(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).

Here, the ALJ found that A.W.F. did not engage in substantial gainful activity "between November 29, 2018, the alleged onset date, and June 30, 2020." Tr. 13. At step two, the ALJ found that A.W.F. "had the following severe impairments: [a] mental impairment variously diagnosed as generalized anxiety disorder (GAD), attention deficit hyperactivity disorder (ADHD), dysthymic disorder with attention deficit disorder (ADD) and opposition defiance disorder (ODD), depression, marijuana use, acute intoxication, major depressive disorder, obsessive - compulsive disorder, and cannabis dependence[.]" Tr. 14. The ALJ found that A.W.F.'s seizure disorder, trismus, temporomandibular joint pain dysfunction syndrome, left foot injury, vertebrobasilar insufficiency, central vertigo, migraines, asthma, bronchitis, pharyngitis, and left thigh strain were non-severe. *Id.* The ALJ also found that A.W.F. did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.* The ALJ determined that A.W.F. had the residual functional capacity ("RFC") to:

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except [he] could frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; could occasionally balance; could never climb ropes, ladders, or scaffolds; and had to avoid all exposure to hazards such as dangerous moving machinery and unprotected heights. Additionally, [he] was limited to performing simple, 1 - 4 step, routine, and repetitive tasks in a low - stress work environment, defined as requiring only occasional decision making and occasional changes in the work setting, where there would only be occasional contact with co - workers and supervisors, and no contact with the general public, and which would not require a fast pace or production quotas such as would customarily be found on an assembly line.

Tr. 17–18. Because A.W.F.'s RFC did not prevent him from performing jobs existing in significant numbers in the national economy, the ALJ found that he was not disabled. Tr. 23–24.

## III. LEGAL STANDARDS

The Court's review is limited to determining whether substantial evidence supports the ALJ's findings and whether the ALJ applied the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). The ALJ's factual findings are conclusive if supported by

"substantial evidence," 42 U.S.C. § 405(g), which is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion," *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). It is "more than a mere scintilla" and "somewhat less than a preponderance." *Id.* In conducting the substantial-evidence inquiry, the Court considers whether the ALJ "analyzed all evidence" and "sufficiently explained the weight [they have] given to obviously probative exhibits[.]" *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439 (4th Cir. 1997).

## IV.   ANALYSIS

Plaintiff argues that the RFC assessment is not supported by substantial evidence. ECF No. 12 at 7. Specifically, she contends that the ALJ "did not explain how [they] decided that [A.W.F.] could not perform work that requires 'a fast pace or production quotas such as would customarily be found on an assembly line.'" *Id.* at 10. She argues that this oversight precludes judicial review. *Id.* at 11. Defendant counters that "the ALJ reached [their] decision through the application of the correct legal standards" and that the RFC assessment is based on substantial evidence. ECF No. 14 at 12.

A claimant's RFC is "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). Social Security Ruling ("SSR") 96-8p details the steps an ALJ must take when assessing a claimant's RFC. *See generally* SSR 96-8p, 1996 WL 374184 (July 2, 1996). The ruling explains that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *6–7.

Here, the ALJ devoted a full paragraph to describing the limitations imposed by A.W.F.'s "cognitive and intellectual functioning." Tr. 20. The ALJ noted that A.W.F. produced "low average" and "borderline" IQ scores and that A.W.F. could follow "some complex instructions." *Id.* The ALJ also noted that most of A.W.F.'s mental status examinations indicated that he had "normal concentration and attention" and a "normal thought process." *Id.* The ALJ also observed that A.W.F.'s daily activities implied a capacity to "maintain functional levels of concentration." Tr. 21. Based on these observations, the ALJ concluded that "the evidence regarding [A.W.F.'s] cognitive and intellectual functioning, when considered as a whole, shows that he would have been able to perform . . . at a non – production pace." *Id.*

Although the ALJ appropriately looked to the medical evidence of record in reaching this determination, it is unclear how any of the cited evidence *supports* the conclusion that the ALJ reached. Crucially, the "logical explanation" for an RFC finding is "just as important as" citing the evidence that reinforces that finding. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). Thus, when an ALJ identifies evidence to support a conclusion but fails to "build an accurate and logical bridge" from the evidence to the conclusion, the ALJ's finding cannot be meaningfully reviewed. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Here, the ALJ failed to explain how A.W.F.'s IQ scores, thought processes, or ability to concentrate are supportive of the conclusion that A.W.F. can only work at a non-production pace. The Court therefore agrees with Plaintiff that the ALJ erred in assessing this portion of A.W.F.'s RFC.

But this conclusion does not end the Court's inquiry. In reviewing SSA decisions, the Court applies a harmless-error standard. *See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 658 (4th Cir. 2017). An error is harmless "when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Kersey v. Astrue*, 614 F. Supp. 2d 679, 696 (W.D. Va. 2009).

Governed by that standard, and having carefully reviewed the entire record, the Court finds that the ALJ's error was inconsequential. After concluding that A.W.F. had a "moderate" limitation in concentration, persistence, and pace ("CPP"),[3] the ALJ evaluated the opinions of two psychological consultants, both of whom conducted mental RFC assessments of A.W.F. Tr. 16, 22, 111, 147. The consultants provided narrative explanations of A.W.F.'s "sustained concentration and persistence" limitations. Tr. 111, 147. Both consultants determined that A.W.F. had a moderate limitation in his ability to "sustain concentration for extended periods or work around others" and that A.W.F. could "carry out most tasks" despite his limitations. Tr. 111, 147. The consultants noted that A.W.F. had no "significant[]" limitations with respect to "perform[ing] at a consistent pace." Tr. 111, 147. They proffered no additional views concerning pace. Tr. 111, 147. The ALJ found the opinions of both consultants to be persuasive. Tr. 22. Accordingly, the ALJ limited A.W.F. to, among other things, performing simple, routine, and repetitive tasks, occasional contact with co-workers and supervisors, and no contact with the general public. Tr. 17–18.

The ALJ also restricted A.W.F. from working at a production pace, but that limitation was not set forth in the consultants' opinions. Consequently, and for the reasons discussed above, it is unclear how the ALJ determined that a production-pace limitation was necessary. Nevertheless, the Court cannot conclude that the lack of explanation for this pace limitation amounts to reversible error. Significantly, the consultants' opinions are the only evidence in the record that even *refers* to pace. Thus, to the extent that a pace limitation was necessary at all, the ALJ adopted one that was more restrictive than anything suggested within the record. The record's near-total lack of evidence concerning pace, combined with the ALJ's adoption of numerous CPP provisions that draw support from the evidence, makes clear that the ALJ adequately accommodated A.W.F.'s mental limitations. Additionally, Plaintiff has not explained how the outcome of this case might differ if pace were correctly assessed. For these reasons, the Court is unable to conclude that remand for additional analysis might result in a more restrictive RFC assessment or a finding of disability. Thus, the ALJ's error was harmless. *Kersey*, 614 F. Supp. 2d at 696. The Court will therefore affirm the ALJ's decision.

---

[3] When a claimant has a mental impairment, an ALJ must make "a specific finding as to the degree of limitation" in concentration, persistence, and pace ("CPP"). *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). CPP involves "the abilities to focus attention on activities and stay on task age-appropriately." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E)(3). When an ALJ determines that a claimant has a moderate CPP limitation, the ALJ must either include a corresponding provision in their RFC assessment or explain why no such provision is warranted. *See Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015).

*Camelieta F. o/b/o A.W.F. v. Commissioner, Social Security Administration*
Civil No. SAG-23-1745
May 21, 2024
Page 5

## V.     **CONCLUSION**

For the reasons set forth herein, the SSA's judgment is AFFIRMED pursuant to sentence four of 42 U.S.C. § 405(g).  The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as a Memorandum Opinion. An implementing order follows.

Sincerely yours,

/s/
Stephanie A. Gallagher
United States District Judge